## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered: February 18, 2016        520401
_____

In the Matter of EBONY C.
   BROWN,
                   Respondent-
                   Appellant,

    v

TAKEIMA COMER,                      MEMORANDUM AND ORDER
                   Appellant-
                   Respondent,

    and

JAHLIRE RAHEEM NICHOLSON,
                   Respondent.
_____

Calendar Date: January 5, 2016

Before: McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____

     Lisa K. Miller, McGaw, for appellant-respondent.

     Alena E. Van Tull, Binghamton, for respondent-appellant.

     Christopher A. Pogson, Binghamton, for respondent.

     Larisa Obolensky, Delhi, attorney for the child.

_____

Clark, J.

     Cross appeals from an order of the Family Court of Broome County (Connerton, J.), entered January 13, 2015, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent Jahlire Raheem Nicholson (hereinafter the father) are the unmarried parents of a daughter (born in July 2011). Shortly before the child's birth, the mother moved from New York City to the City of Binghamton, Broome County, where she resided with her cousin, respondent Takeima Comer. Approximately a month after the child's birth, Comer asked the mother to move out and live with another cousin in Binghamton so that Comer could become eligible to obtain social services benefits for the child. Pursuant to a stipulation by the mother and Comer, a September 2011 order granted them joint legal custody with Comer having primary physical custody and the mother visitation, which she exercised liberally. By pro se petition in October 2013 and eventually an amended petition prepared by counsel in March 2014, the mother sought to modify the prior order to grant her sole legal and physical custody with visitation provided to the father.

Following a hearing, Family Court found that Comer — a nonparent — had established extraordinary circumstances, but, nonetheless, the mother had sufficiently shown that it was now in the child's best interests to reside with the mother. The court thus granted the petition and awarded the mother custody with visitation to the father. Comer appeals, urging that Family Court erred in determining that it was in the child's best interests to grant the mother custody, and the mother appeals from so much of the order as found that Comer established extraordinary circumstances.

"[A] parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, disruption of custody over an extended period of time or other extraordinary circumstances" (Matter of Battisti v Battisti, 121 AD3d 1196, 1196-1197 [2014] [internal quotation marks and citations omitted]; see Matter of Sweeney v Sweeney, 127 AD3d 1259, 1260 [2015]). "[T]he nonparent bears the heavy burden of proving extraordinary circumstances and the existence of a prior consent order of custody in favor of the nonparent is not sufficient to demonstrate extraordinary circumstances" (Matter of Ramos v Ramos, 75 AD3d 1008, 1010 [2010] [internal quotation marks and citations omitted]; see Matter of McBride v Springsteen-El, 106 AD3d 1402, 1403 [2013]).

"The extraordinary circumstances analysis must consider 'the cumulative effect' of all issues present in a given case" (Matter of Pettaway v Savage, 87 AD3d 796, 797 [2011], lv denied 18 NY3d 801 [2011], quoting Matter of Melody J. v Clinton County Dept. of Social Servs., 72 AD3d 1359, 1362 [2010], lv denied 15 NY3d 703 [2010]), including, among others, "the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the . . . parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Bevins v Witherbee, 20 AD3d 718, 719 [2005]). Since a finding of extraordinary circumstances may have enduring consequences for the parent (see Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1106 [2015]; Matter of Ray v Eastman, 117 AD3d 1114, 1114 [2014]; Matter of Cusano v Milewski, 68 AD3d 1272, 1273 [2009]), it can be challenged on appeal even if, as here, the parent ultimately obtained custody.

Initially, Family Court incorrectly relied upon Domestic Relations Law § 72 (2) — i.e., a prolonged separation for at least 24 continuous months — as the basis for its finding of extraordinary circumstances. As thoroughly explained in a recent Court of Appeals opinion, Domestic Relations Law § 72 "defines an alternative type of extraordinary circumstance applicable only to grandparents" (Matter of Suarez v Williams, 26 NY3d 440, 448 [2015] [emphasis added]). Inasmuch as Comer is not the child's grandparent, Domestic Relations Law § 72 is unavailable to her as a method to achieve standing in this matter.[1] Furthermore, after reviewing the record, we agree with the mother that Comer was unable to meet her heavy burden of proving extraordinary circumstances.

Here, the proof at the hearing established that the mother,

---

[1] This is not to say that the amount of time that the child lived with Comer should not have been considered by Family Court as a part of its extraordinary circumstances analysis (see Matter of Bennett v Jeffreys, 40 NY2d 543, 546 [1976]; Matter of Bevins v Witherbee, 20 AD3d at 719), but simply a clarification that Family Court's sole reliance upon Domestic Relations Law § 72 (2) constitutes an error of law under these circumstances.

who was 22 years old and had another young child, was in a difficult situation when pregnant and living at the residence of a former boyfriend in New York City. Comer agreed to allow her to stay in her apartment in Binghamton until she could get back on her feet. Although the mother did not want to leave the child with Comer, she agreed to move into Comer's sister's residence so that Comer could get social services benefits for the child – benefits that would otherwise not be available to Comer should the mother continue to reside with the child. After a flood damaged the apartment of Comer's sister, however, the mother returned to live with Comer for about three months in late 2011 and paid Comer to care for the child while she worked.

Significantly, the mother remained substantially and actively involved in the child's life as she took steps to stabilize her own life. She obtained a job and she had the child stay with her on days when she was not working. On days that she worked, she spent most of her nonworking, awake hours at Comer's apartment with the child. While the child developed a close relationship with Comer, the child clearly bonded to the mother, and the child referred to her, not Comer, as her mother. Additionally, the mother provided Comer with monetary support to help with the child's expenses, had some involvement in the child's medical and dental care and indicated that her further involvement was prevented by Comer's lack of cooperation.

After her life and living situations stabilized in 2013, the mother told Comer she wanted custody and, when Comer refused, the mother eventually commenced a series of proceedings.[2] Although two years had passed between the consent order and the mother's first petition seeking full custody, during such time the mother had meaningful and substantial interaction with the child. She remained actively involved in the child's life in

_____

[2]  The first petition was dismissed for failing to allege a change in circumstances; however, such proof is not necessary when a parent seeks to regain custody from a nonparent and there has not been a prior judicial determination of extraordinary circumstances (see Matter of Dumond v Ingraham, 129 AD3d 1131, 1132-1133 [2015]).

many ways and on a daily basis, and she did not completely abdicate her parental rights and responsibilities (see Matter of Mildred PP. v Samantha QQ., 110 AD3d 1160, 1161 [2013]; compare Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1049 [2014]). Thus, the contact between the mother and the child and the absolute lack of any proof concerning other possible factors such as persistent neglect or unfitness preclude a finding of extraordinary circumstances.

Although Comer's challenge to Family Court's determination regarding the child's best interests is academic since such issue is considered only if extraordinary circumstances are first proven (see Matter of Gardner v Gardner, 69 AD3d 1243, 1245 [2010]), we note that, had we reached such issue, there is a sound and substantial basis in the record supporting Family Court's determination.  Comer's alternative request for visitation was properly denied by Family Court (see Matter of Hayley PP. [Christal PP.—Cindy QQ.], 77 AD3d 1133, 1135 [2010], lv denied 15 NY3d 716 [2010]; Gulbin v Moss-Gulbin, 45 AD3d 1230, 1231 [2007], lv denied 10 NY3d 705 [2008]).

McCarthy, J.P., Egan Jr. and Lynch, JJ., concur.

ORDERED that the order is modified, on the law and the facts, without costs, by reversing so much thereof as determined that respondent Takeima Comer established extraordinary circumstances, and, as so modified, affirmed.

ENTER:

*Robert D Mayberger*

Robert D. Mayberger
Clerk of the Court